SAMUEL TOMPSON vs. GRACE STEVENSON.

Suffolk. November 13, 1891. — February 25, 1892.

Present: ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Deed — Vote of Corporation — Authority to convey.*

On May 12, 1868, the directors of a land company voted to discontinue, among others, a street on the south side of a railroad, and to convey the fee of the street to the owners of the land on the southerly side thereof, "the company to be released from all liability of making said streets where so conveyed." Previously, in 1867, the company had conveyed the land on the southerly side of the street to A., by a deed bounding "northerly by a street thirty feet wide"; and by another deed, dated April 8, 1868, and acknowledged July 27, 1868, witnessed by the company's treasurer, A. conveyed the same land to B. On April 8th, an agreement was also prepared between the company by its treasurer and B., containing provisions which contemplated his becoming the owner of the land south of the thirty-foot street, and also the discontinuance of that street, and the use of the land by others than B. for building purposes, and containing an agreement on the part of B., for himself, his heirs, and assigns, that whenever a discontinuance took place he would release all rights in the street as a highway, except as to a turnway and certain restrictions provided for in the agreement. *Held*, that a deed dated April 1, 1869, by which the company conveyed to A. the land included in the street, was within the authority of the vote of May 12, 1868.

WRIT OF ENTRY, to recover a parcel of land in Boston. Plea, *nul disseisin.* At the trial in the Superior Court, before *Lathrop,* J., there was evidence tending to prove the following facts.

On June 20, 1867, the Boston Water Power Company conveyed, by a deed duly executed and recorded with Suffolk Deeds, Book 902, page 192, to Daniel Davies, a parcel of land "bounded easterly by West Chester Park three hundred and five and fifty-six one-hundredths feet, southerly by land now or late of H. T. Arnold one hundred feet, westerly by other land of said Boston Water Power Company three hundred and five and fifty-six one-hundredths feet, northerly by a street thirty feet wide, running parallel to the Boston and Providence Railroad, one hundred feet, and containing thirty thousand five hundred and fifty-six feet." This deed was duly executed in behalf of the Boston Water Power Company by its treasurer, G. T: W. Braman. The "street thirty feet wide," described in

the above deed as bounding on the north the parcel thus conveyed to Davies, constituted the demanded premises, and was then owned by the Boston Water Power Company. By a later deed, Davies conveyed the same parcel to Calvin Swallow, describing it as " containing thirty thousand five hundred and fifty-six square feet, more or less, bounded northeasterly by West Chester Park extended, three hundred and five and fifty-six one-hundredths feet; southeasterly by land late of Nathan Matthews, now of the grantee, one hundred feet; southwesterly by land of the Boston Water Power Company three hundred and five and fifty-six one hundredths feet; and northwesterly by a street thirty feet wide, running parallel with the Boston and Providence Railroad, one hundred feet." This deed was dated April 8, 1868, and was witnessed by Braman, but was not acknowledged by Davies, as appeared by the certificate thereon, until July 27, 1868, nor recorded with the Suffolk Deeds until July 28, 1868.

On the same April 8th, the Boston Water Power Company and Swallow entered into an agreement under seal, which set forth, among other things, that the Boston Water Power Company " hereby grants and conveys to the said Calvin Swallow and his heirs and assigns the use, in common with said company and its successors and assigns, in a strip of land bounded southeast . . . by land of said Swallow two hundred and eighty-eight feet, northwest by a thirty-foot street running parallel with the Boston and Providence Railroad five feet, . . . said strip of land to be used, as aforesaid, in connection with the strip of land next hereinafter described, for all the usual purposes of a passageway for way and drainage"; that Swallow " hereby grants and conveys to the said Boston Water Power Company and its successors and assigns the use, in common with said Swallow and his heirs and assigns, in a strip of land adjoining on the northeast the strip of land hereinbefore described, and bounded . . . northwest by the thirty-feet street aforesaid five feet, . . . said last described strip of land to be used as aforesaid in connection with said first described strip of land for all the usual purposes of a passageway for way and drainage, and the two strips of land forming one common passageway, situated in the rear of Columbus Avenue and West

Chester Park extended, in the city of Boston, being northwesterly of said avenue, and southwesterly of said West Chester Park extended. And said company hereby agrees with said Swallow and his heirs and assigns, proprietor and proprietors of land on both sides of said West Chester Park extended, that the said company will, at its own expense, fill up and grade said West Chester Park to the grade required by the city, as soon and as fast as shall be required by said Swallow and his heirs and assigns (on either side of said park), for their convenience in the erection of buildings thereon. And said company further agrees with said Swallow and his heirs and assigns to pay one half of the expense of constructing the drain to be laid in the passageway hereinbefore laid out and dedicated, and also to pay one half of the expense of constructing the drain to be laid out in a certain other passageway on the other side of West Chester Park, and between land of said Swallow and land of Daniel Davies, which last passageway is described in the deed of said Davies to said Swallow of even date herewith, and recorded with Suffolk Deeds. And said company further agrees with said Swallow and his heirs and assigns, proprietor of land on both sides of said West Chester Park, between said Columbus Avenue and the thirty-feet street aforesaid, that in case said thirty-feet street shall hereafter be discontinued, it, the said company, will lay out a turnway, so called, to the northwest end of each of said passageways, and for the use of said passageways, said turnways to extend thirty feet northwesterly, and to be forty feet in width, and may be used for such purpose by all proprietors of land bounding on said passageways extending from Columbus Avenue northwesterly thereto, it being understood and agreed by all the parties hereto that the corners of said passageways at their junction with said turnways shall be rounded, for the more convenient entrance to and exit from said turnways. And by said passageways is intended and meant the passageway hereinbefore laid out and dedicated, between land of said company and land of said Swallow, and the certain other passageway on the other side of said West Chester Park, between land of said Swallow and land of said Davies, as laid out and dedicated by the deed of said Davies aforesaid, and said turnways,

in case said thirty feet shall be discontinued, may be used by any and all proprietors on either of said passageways, and extending from Columbus Avenue northwesterly thereto. And said company further agrees with said Swallow and his heirs and assigns that in case said thirty-feet street shall be discontinued, and the land over which the same is projected be used and occupied for building purposes, that it shall be used and occupied and sold and conveyed subject to all the same or similar restrictions and agreements as are set forth in the deed of said Swallow to Hiram P. Bean, of even date herewith, and recorded with Suffolk Deeds, to the end that there may be uniformity in the character and location of such buildings from Columbus Avenue through to said railroad."

The agreement also bore the following memorandum, under seal, and signed by Swallow: "Boston, April 8, 1868. It is hereby expressly agreed by the within named Calvin Swallow, for himself and his heirs and assigns, with the Boston Water Power Company and its successors and assigns, and as a part of the foregoing agreement, that whenever the thirty-feet street therein mentioned shall be discontinued as therein referred to, he, the said Swallow and his heirs and assigns, shall then release to said company and its successors and assigns all rights in the said thirty-feet street as a highway, except as to turnways and restrictions as in said foregoing agreement set forth."

At a meeting of the directors of the Boston Water Power Company, duly notified, held on May 12, 1868, it was voted, " That the street on the southwesterly side of the Boston and Albany Railroad between Berkeley and Dartmouth Streets, and the street south of the Boston and Providence Railroad between Dartmouth and Camden Streets, be and the same hereby are discontinued, and that the fee of said streets be conveyed to the owners of the land on the southwesterly and southerly sides of said street, the company to be released from all liability of making said streets where so conveyed."

On April 1, 1869, the Boston Water Power Company, by a deed duly executed by G. T. W. Braman, its treasurer, and bearing the indorsement, " Approved, Charles D. Head, N. Matthews, Directors," conveyed to Davies two parcels of land, described as being the " same laid out by said grantor as a street

thirty feet wide, parallel with the Boston and Providence Railroad, the land adjoining which was conveyed to said grantee by the Boston Water Power Company, by deed dated June 20, 1867, recorded with Suffolk Deeds, Liber 902, folio 192, and which street was discontinued by said grantor by a vote of the directors recorded herewith. This conveyance is subject to the same restrictions and agreements contained in said deed of the Boston Water Power Company to said grantee, dated June 20, 1867, the said grantor being released from all liability of building and maintaining said street hereby conveyed."

The tenant derived her title under the deed last mentioned from the Boston Water Power Company to Davies. The demandant claimed title under a release of the Boston Water Power Company to him, dated May 10, 1888, of a parcel of land described as " a part of the land laid out by the grantor as a street thirty feet wide parallel with the Boston & Providence Railroad, and which street was discontinued by said grantor by a vote of the directors " of May 12, 1868.

The judge ruled in effect that the deed to Davies of April 1, 1869, from the Boston Water Power Company, was not within the authority of its vote of May 12, 1868, and ordered a verdict for the demandant; and the tenant alleged exceptions.

*G. R. Swasey & W. H. Brown*, for the tenant.

*W. B. F. Whall*, for the demandant.

ALLEN, J. The title of the tenant is derived under a deed from the Boston Water Power Company to Davies, dated April 1, 1869, executed by its treasurer, and bearing the approval of two directors. The only authority for a conveyance at that time was a vote of the directors on May 12, 1868, as follows: " That the street on the southwesterly side of the Boston and Albany Railroad between Berkeley and Dartmouth Streets, *and the street south of the Boston and Providence Railroad between Dartmouth and Camden Streets*, be and the same hereby are discontinued, and that the fee of said streets be conveyed to the owners of the land on the southwesterly and southerly sides of said street, the company to be released from all liability of making said streets where so conveyed." The words in Italics describe the premises now in dispute.

At the time the above vote was passed, Davies was the owner

of the land on the southerly side of said street; but by deed
dated April 8, 1868, and acknowledged July 27, 1868, he con-
veyed the same to Swallow, who remained the owner till after
the deed of the premises in dispute, on April 1, 1869, to Davies.

If that vote authorized a conveyance to one who was the owner
of the land on the southerly side of the street, at the time when
the vote was passed, though not remaining the owner at the
time of the actual conveyance, then the deed was good; other-
wise not.

It would be plain enough that a conveyance was authorized
to the owner of the land at the time the vote was passed but
for the last clause of the vote, " the company to be released from
all liability of making said streets where so conveyed." The
demandant's view is that this clause derives its significance in
reference to the land in dispute from the fact that previously,
on June 20, 1867, the Boston Water Power Company had con-
veyed to Davies the land on the southerly side of said street
bounded " northerly by a street thirty feet wide," which is the
land now in dispute. The Boston Water Power Company be-
ing then the owner of the land thus described as a street thirty
feet wide, the grantee would acquire certain rights in such land
or street, but the precise extent of those rights need not be con-
sidered, and perhaps at the time was not fully understood. *Howe*
v. *Alger,* 4 Allen, 206. *Hennessey* v. *Old Colony & Newport Rail-
road,* 101 Mass. 540, decided in 1869, but not published till 1871.
Such rights were not personal to the grantee, but were incident
to the grant, and would pass to a subsequent purchaser of the
land. Swallow, therefore, as the demandant contends, became
the one in whose favor the rights in the street would be vested
at the time of the deed to Davies on April 1, 1869, and would be
the only one who could release those rights.

These considerations, if unexplained and uncontrolled, would
certainly have much force in leading to the construction of the
vote which is contended for by the demandant, namely, that the
conveyance which was authorized was only to such person as
should be the owner of the land on the south at the time of giv-
ing the deed. But an examination of the other facts existing at
the time the vote was passed leads us to the other construction.

The deed of Davies to Swallow was dated April 8, 1868, though

not acknowledged till July 27. It was witnessed by G. T. W. Braman, who was then the treasurer of the Boston Water Power Company. On the same day of the date of that deed, it would seem that an agreement was prepared between the Boston Water Company, by G. T. W. Braman, treasurer, and Swallow, containing provisions which contemplated his becoming the owner of the land south of the thirty-feet street, and which also contemplated the discontinuance of that street and the use of the land by others than Swallow for building purposes; and containing an agreement on the part of Swallow, for himself and his heirs and assigns, that whenever the thirty-feet street should be discontinued he would release all rights therein as a highway, except as to a turnway and certain restrictions provided for in the agreement.

The vote of the company under which the tenant claims was passed on May 12, 1868. At that time it is true that there had been no delivery of the deed of Davies to Swallow, or of the agreement of Swallow with the Boston Water Power Company; but, in the absence of anything to show to the contrary, it is to be inferred from the dates that both had been prepared, and at the time of passing the vote, it was apparently contemplated and expected that Swallow should become the owner of the land lying southerly of the street, but not the owner of the land of the street itself, and the agreement dated April 8, making full provision for his release of all the right which the company cared to have released in the street as a highway had been prepared. In case this agreement should be executed, as then contemplated, there would be no necessity for any further protection from Swallow or his assigns; and, in view of the plan and arrangement then under way, it does not seem probable that the last clause of the vote was intended to restrict the power of making the conveyance to Swallow, or to such other person as might be the owner of the land lying southerly of the street at the time when the conveyance might be made.

We are therefore of the opinion, that the deed of the Boston Water Power Company to Davies, dated April 1, 1869, was within the authority of the vote; and if this is so, the demand-ant concedes that he has no case.

*Exceptions sustained.*